United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILSON ANTONIO URBINA PALACIOS,<br>Plaintiff,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Defendants. | Case No. 26-cv-12655-TLT<br><br>**ORDER DENYING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 4, 6 |

On October 28, 2026, Petitioner Wilson Antonio Urbina Palacios ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"). ECF 1. Petitioner alleges that his procedural and substantive due process rights were violated when U.S. Immigration and Customs Enforcement ("ICE") conducted a vehicle stop and re-detained him without notice or a pre-detention hearing. ECF 1 ¶¶ 37, 51-58. Petitioner filed an *ex parte* application for temporary restraining order ("TRO") the same day. ECF 4; ECF 5.

Before the case was assigned to this department, Duty Judge Araceli Martínez-Olguín granted Petitioner's TRO application and ordered the government to immediately release Petitioner from custody based upon the information provided in the ex parte application. ECF 6 at 5. The government was also from: (1) re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker; and (2) removing Petitioner from this District or from the United States while these proceedings remain pending. ECF 6 at 5-6. The TRO required the government to show cause why a preliminary injunction should not be issued. ECF 6 at 6. The government timely filed its response to the order to show cause on November 3, 2026. ECF 11. Petitioner filed his reply the same day. ECF 13.

On November 4, 2026, the Court granted the parties' joint motion to vacate the preliminary

injunction hearing scheduled for November 10, 2026, and took the matter under submission pursuant to Civil Local Rule 7-11(b). ECF 15. In addition, the Court requested and received supplemental submissions from the parties. ECF 16; ECF 17. Accordingly, the matter is now before the Court for decision.

Having considered the parties' briefs, supplemental submissions, the relevant legal authority, and for the reasons below, the Court **DENIES** Petitioner's request for preliminary injunctive relief.

## I. FACTUAL BACKGROUND

Petitioner is an asylum-seeker from Nicaragua. ECF 6 at 1. He entered the United States in 2022 and was apprehended by Department of Homeland Security ("DHS") officials at the border. ECF 6 at 1; ECF 1 ¶ 2. He was released shortly thereafter on an Order of Recognizance pursuant to 8 U.S.C. § 1226(a) to await his immigration court date. ECF 6 at 1.

In 2022, ICE issued Petitioner a Notice to Appear ("NTA") stating that his immigration court hearing would be held at a date and time to be set. ECF 6 at 2. The NTA was never submitted to the Department of Justice's Executive Office of Immigration Review. ECF 11-2 at 4. Nor was Petitioner ever scheduled for a hearing in immigration court. ECF 6 at 2. The following year, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture. ECF 6 at 2. Petitioner's asylum application remains pending. ECF 6 at 2. Petitioner's NTA was later cancelled by ICE on January 18, 2024. ECF 11-2 at 4.

Based on his asylum application, Petitioner obtained a work permit that remains valid until October 2028. ECF 6 at 2. Petitioner works six days a week as a delivery person. ECF 1 ¶ 36; ECF 5-1 ¶ 13. He lives in San Pablo, California with his girlfriend and has three brothers who also live in San Pablo. ECF 5-1 ¶¶ 3, 11-12.

In October 2025, a domestic incident occurred between Petitioner and his girlfriend. ECF 5-2 ¶ 4. According to a declaration submitted by Petitioner's girlfriend in support of his TRO application, she was at a birthday party near Petitioner's residence. ECF 5-2 ¶ 4. She was drinking alcohol when the Petitioner "showed up out of nowhere." ECF 5-2 ¶ 4. The couple got into a fight and Petitioner purportedly drove off in her car to prevent her from driving under the influence. ECF

United States District Court
Northern District of California

5-2 ¶ 5. Petitioner's girlfriend then called the police. ECF 5-2 ¶ 6. She chose not to press charges, reconciled with Petitioner a few months after this incident, and currently lives with him. ECF 5-2 ¶¶ 7-9.

On November 22, 2025, Petitioner was arrested by the San Pablo Police Department in connection with the above-described incident. ECF 5-1 ¶ 8; ECF 11-2 at 17-18. According to a RAP sheet submitted by the government in response to the Court's order to show cause why a preliminary injunction should not issue, Petitioner was arrested for felony infliction of corporal injury on spouse/cohabitant/dating ("domestic violence"), damage to a wireless communications device, and felony kidnapping. ECF 11-2 at 17-18.

Based on the parties' respective submissions, the record is unclear regarding whether Petitioner was ever charged with the above-referenced offenses, or whether any felony criminal proceedings are still pending. *Compare* ECF 11-2 at 3-4 (Department of Homeland Security record indicating that Petitioner's case is still pending with respect to his alleged domestic violence and kidnapping charges), *with* ECF 1 ¶ 4 (alleging that, "[u]pon information and belief, no charges were ever filed"), *and* ECF 16 ¶ 3 (supplemental submission from Petitioner stating that he was "given an ankle monitor when he was released from criminal custody following the November 22, 2025 arrest. In early 2026, Petitioner received a call about removing his ankle monitor. He went in, and his ankle monitor was removed. He was told he no longer has any charges pending against him."). The Court is not aware of any records indicating that Petitioner has any criminal convictions and does not have clarity regarding the proceedings following the Petitioner's November 22, 2025 arrest.

On October 28, 2026, ICE officers surveilled Petitioner as part of an ICE operation. ECF 11-2 at 3. ICE officers watched as Petitioner left his residence and got into his vehicle. ECF 11-2 at 3. The officers then conducted a vehicle stop and took Petitioner into custody. ECF 11-2 at 4. Petitioner was taken to an ICE field office in San Francisco, California. ECF 11-2 at 4. ICE issued a new NTA that ordered Petitioner to appear in immigration court on November 17, 2026. ECF 11-2 at 10.

That same day, Petitioner filed the instant Petition and TRO application. ECF 1; ECF 4; ECF 5. Later that evening, Petitioner was released from ICE custody in accordance with the Court's

TRO. ECF 6 at 5; ECF 8.

The TRO expires on November 11, 2026 at 6:00 p.m. ECF 6 at 6.

## II. LEGAL STANDARDS

### A. Preliminary Injunction

The standard for issuing a preliminary injunction is virtually identical to the standard for issuing a TRO. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (citation and internal quotation marks omitted). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (cleaned up). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### B. Due Process Clause

The Due Process Clause of the Fifth Amendment to the United States Constitution states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is settled law that the Due Process clause applies to noncitizens within the United States 'whether their presence here is lawful, unlawful, temporary, or permanent.'" *Salcedo Aceros v. Kaiser*, No. 25-cv-5624-EMC, 2025 WL 2637503, at *5 (N.D. Cal. Sept. 12, 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

"The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *United States v. Quintero*, 995

F.3d 1044, 1051 (9th Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience, or interferes with rights implicit in the concept of ordered liberty." *Id.* (citation and internal quotation marks omitted). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Id.* at 1051–52 (citation and internal quotation marks omitted).

## III. DISCUSSION

Below, the Court first addresses the threshold issues of subject matter jurisdiction and prudential exhaustion. Then, the Court evaluates the merits of Petitioner's due process claims.

### A. The Court Has Subject Matter Jurisdiction.

The government argues that 8 U.S.C. § 1226(e) prohibits judicial review because ICE's decision to re-detain Petitioner was a discretionary decision by ICE. ECF 11 at 8. This argument is foreclosed by Ninth Circuit precedent. *See Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *Hernandez v. Sessions*, 872 F.3d 976, 987-88 (9th Cir. 2017). Here, Petitioner raises procedural and substantive due process challenges to his re-detention by ICE without notice or a pre-detention hearing and "asks the Court to enjoin the government from violating his rights." *Mendoza de la Cruz v. Albarran*, No. 26-CV-10648-AMO, 2026 WL 2944153, at *4 (N.D. Cal. Sept. 30, 2026). As numerous other Courts in this District have held, this Court has jurisdiction over Petitioner's due process claims. *See id.*; *Chavez Escobar v. Alberran*, No. 26-CV-08659-CRB, 2026 WL 2640659, at *2 n.2 (N.D. Cal. Sept. 8, 2026); *Chaparro Ayala v. Albarran*, No. 26-CV-09430-CRB, 2026 WL 2722780, at *2 (N.D. Cal. Sept. 15, 2026).

### B. Administrative Exhaustion is Not Required.

For habeas claims, "[t]he exhaustion requirement is prudential, rather than jurisdictional." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). "Courts may nonetheless waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003

United States District Court
Northern District of California

(N.D. Cal. 2018) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). To excuse exhaustion, Petitioner "must show that at least one of the *Laing* factors applies." *Id.*

Although the government contends that Petitioner should be required to exhaust his administrative remedies (ECF 11 at 14), Petitioner has met his burden of showing that at least one *Laing* factor applies. *See Chavez Escobar v. Alberran*, No. 26-CV-08659-CRB, 2026 WL 2640659, at *7 n.5 (N.D. Cal. Sept. 8, 2026); *Hernandez v. Mullin*, No. 5:26-CV-00585-JAK (ADSX), 2026 WL 846037, at *7-8 (C.D. Cal. Mar. 24, 2026). Here, Petitioner alleges that the government violated his due process rights when it detained him without notice or a pre-deprivation hearing. ECF 1 ¶¶ 37, 51-58. As Petitioner alleges in the Petition, requiring administrative exhaustion here would be futile. ECF 1 ¶ 18. Neither an immigration court nor the BIA has the authority to decide constitutional due process challenges to detention. *See Chavez Escobar*, 2026 WL 2640659, at *7 n.5 ("The Court rejects Respondents' . . . argument regarding exhaustion, mainly because constitutional Due Process challenges are precisely the sort of constitutional challenge that is 'beyond the competence of that [agency] to decide."); *Chaparro Ayala*, 2026 WL 2722780, at *7 n.5 ("[W]here a petitioner's claims concern the constitutionality of an agency action prior to the bond hearing, they fall beyond the jurisdiction of the Board of Immigration Appeals and requiring administrative exhaustion would be futile.") (citation and internal quotation marks omitted)

Accordingly, the Court waives the administrative exhaustion requirement.

**C. Plaintiff Fails to Show a Likelihood of Success on the Merits of His Due Process Claims.[1]**

**i. Procedural Due Process**

In evaluating a procedural due process challenge, the Court determines what process is required by weighing the three *Mathews v. Eldridge factors*. 424 U.S. 319, 335 (1976).[2] "First, the

[1] The Court does not reach all of the arguments and issues raised in the parties' briefing. Where a particular argument or legal doctrine is dispositive, the Court rules on that issue only.

[2] Although the government points out that "[w]hether the *Mathews* test applies in th[e] [immigration detention] context is an open question in the Ninth Circuit" (ECF 11 at 10), the Ninth Circuit and numerous courts in this District have applied the *Mathews* factors in evaluating due process challenges to immigration detention. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–14 (9th Cir. 2022) ("assum[ing] without deciding that *Mathews* applies," but applying the *Mathews* factors in the context of a due process challenge to 8 U.S.C. § 1226(a)'s procedures); *Guillermo M.*

private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Among other arguments, the government contends that Petitioner's November 2025 arrest is a changed circumstance that justifies his detention. ECF 11 at 9. In short, the government argues that Petitioner's November 2025 arrest shows that he is a danger to the community. ECF 11 at 9. Based on the particular facts and circumstances of this case, the Court agrees.

Turning to the first *Mathews* factor, the Court concludes that Petitioner has a protected liberty interest in his continued freedom. *See Ortega Macario v. Albarran*, No. 25-CV-10885-TLT, 2026 WL 1916262, at *7 (N.D. Cal. Feb. 2, 2026) (holding that noncitizen had a protected liberty interest in his continued freedom, as he had "lived in the United States released on his own recognizance" for four years); *Ramirez Balboa v. Albarran*, No. 26-CV-08870-RFL, 2026 WL 2678865, at *2 (N.D. Cal. Sept. 10, 2026) ("Petitioner, who has been living in the United States for more than four years since he was released from immigration detention, undoubtedly has a protectible liberty interest in remaining out of custody even if ICE's initial decision to release him was discretionary."). Petitioner has lived in the United States for four years after being released by immigration officials on an Order of Recognizance at the border. ECF 6 at 1. He also has a pending asylum application, a valid work authorization, and a job. ECF 6 at 1-2. Thus, the first *Mathews* factor weighs in Petitioner's favor. *See Ortega Macario*, 2026 WL 1916262, at *7; *Ramirez Balboa*, 2026 WL 2678865, at *2.

However, the second and third *Mathews* factors weigh against Petitioner. As the Court held in *Ramirez Balboa*, "Petitioner has not shown a sufficiently high risk of erroneous deprivation, such that his interest in further pre-deprivation process outweighs the government's interest in promptly

---

*R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029 n.2 (N.D. Cal. 2025); *Mena v. Albarran*, No. 26-CV-04749-BLF, 2026 WL 1549201, at *3 (N.D. Cal. June 1, 2026); *Valera Chuquillanqui v. Kaiser*, No. 25-CV-06320-TLT, 2025 WL 4110424, at *6 (N.D. Cal. Oct. 2, 2025). The Court sees no reason not to do the same here.

re-detaining him after his . . . arrest." 2026 WL 2678865, at *1-2 (holding that noncitizen failed to demonstrate that his procedural and substantive due process rights were violated, where ICE detained him without a pre-deprivation hearing five days after he was arrested for domestic battery).

The Court acknowledges that an arrest, standing alone, does not make Petitioner a danger to the community. *See Hernandez Serrano v. Albarran*, No. 26-CV-03452-EKL, 2026 WL 1611876, at *3 (N.D. Cal. June 4, 2026). Here, however, Petitioner was arrested for a particularly serious offense: felony kidnapping. ECF 11-2 at 18; ECF 17-1 at 5. This makes Petitioner's case distinguishable from other instances in which Courts granted preliminary injunctive relief to noncitizens who were arrested for domestic violence, DUIs, or other similar offenses. *See, e.g.*, *Hernandez Serrano*, 2026 WL 1611876, at *1-3 (granting preliminary injunction in favor of asylum seeker who was detained by ICE 6 months after misdemeanor domestic violence arrest); *Mucu Maaz v. Albarran*, No. 5:26-CV-08452-BLF, 2026 WL 2447545, at *1-3 (N.D. Cal. Aug. 20, 2026) (granting preliminary injunction in favor of asylum seeker who was arrested and charged with driving under the influence); *Ortega Macario*, 2026 WL 191626, at *1-2, *6, *8 (granting preliminary injunction in favor of noncitizen who had been arrested for misdemeanor domestic violence and cited for driving under the influence).

Moreover, Petitioner's narrative regarding his November 2025 arrest has shifted. In his Petition, Plaintiff avers that no charges were filed in connection with his November 2025 arrest. ECF 1 ¶ 4. By contrast, in his most recent supplemental submission to the Court, Petitioner discloses that he was "given an ankle monitor when he was released from criminal custody following the November 22, 2025 arrest," and that he was informed in early 2026 that he no longer had any charges pending against him. ECF 16 ¶ 3.

Under these circumstances, the Court finds that the government's interest in re-detaining Petitioner for community safety reasons outweighs any risk of erroneous deprivation that Petitioner may face. *Ramirez Balboa*, 2026 WL 2678865, at *2. Although Petitioner argues that the Court's decision in *Ramirez Balboa* turned on the recency of the petitioner's domestic violence arrest (i.e., the petitioner in *Ramirez Balboa* was detained by ICE only five days after his arrest), the Court does not read *Ramirez Balboa* so narrowly. ECF 13 at 7. While the government waited longer to act in

this case than it did in *Ramirez Balboa*, this does not mean that the government lacks an interest in re-detaining Petitioner for community safety reasons.

Moreover, as in *Ramirez Balboa*, 2026 WL 2678865, at *2, Petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a) (ECF 13 at 4). By statute, Petitioner has a right to a post-deprivation hearing before an immigration judge where he can challenge the government's custody determination.[3] *See Ramirez Balboa*, 2026 WL 2678865, at *2. On this record, Petitioner has not "shown any particular circumstances indicating that the procedural protections afforded by 8 U.S.C. 1226(a) are insufficient to guard against the risk of erroneous deprivation." *Ramirez Balboa*, 2026 WL 2678865, at *2. "Therefore, Petitioner has not shown that due process requires the government to bear a clear and convincing burden of proof that physical custody is required at the custody redetermination hearing." *Id.* Accordingly, Petitioner fails to show that there is any serious question going to the merits of his procedural due process claim.

Thus, Petitioner does not satisfy the first *Winter* factor with respect to his procedural due process claim and the Court need not analyze the other *Winter* factors. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (noting that a plaintiff must make a showing on all *Winter* factors).

**ii. Substantive Due Process**

"As to substantive due process[,] '[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.'" *Ramirez Balboa*, 2026 WL 2678865, at *2 (quoting *Hernandez*, 872 F.3d at 994). Here, as in *Ramirez Balboa*, Petitioner cannot demonstrate that the government lacks an interest in detaining him for safety reasons. *Id.* Although Petitioner characterizes the events that precipitated his arrest as a mere misunderstanding between him and his girlfriend (ECF 5-1 ¶ 8), the Court cannot

---

[3] To the extent that Petitioner argues that his case is dissimilar from *Ramirez Balboa* because no post-deprivation hearing was scheduled, the Court notes that Petitioner likely was not in custody long enough for such a hearing to be scheduled. *See* ECF 11-2 at 2-4; ECF 8. Indeed, pursuant to the Court's TRO, Petitioner was released the same day that he was taken into custody. ECF 6 at 5; ECF 8.

simply ignore the seriousness of the offenses for which Petitioner was arrested (ECF 11-2 at 18; ECF 17-1 at 5), or his shifting narrative regarding whether or not charges were ever filed against him (*compare* ECF 1 ¶ 4, *with* ECF 16 ¶ 3). On this record, and for the reasons discussed above, the Court cannot conclude that the government lacks a legitimate interest in re-detaining Petitioner. See *Ramirez Balboa*, 2026 WL 2678865, at *2.

Finally, the Petitioner's fluctuating narrative may require additional inquiry and consideration necessary to generate a proper record.

As such, Petitioner has not shown that there is a serious question going to the merits of his substantive due process claim. Therefore, Petitioner fails to satisfy the first *Winter* factor with respect to his substantive due process claim and the Court need not consider the other *Winter* factors. *See Cottrell*, 632 F.3d at 1135.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that the government has legitimate and significant public safety reasons for detaining Petitioner. Petitioner has not shown that there is any serious question going to the merits of his procedural or substantive due process claims. Therefore, Petitioner fails to satisfy the first *Winter* factor with respect to either of his claims.

Accordingly, Petitioner's request for preliminary injunctive relief is **DENIED**. The Court's TRO will expire by its own terms on November 11, 2026 at 6:00 p.m.

IT IS SO ORDERED.

Dated: November 9, 2026

TRINA L. THOMPSON
United States District Judge